FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

———————————————

No. 1D2023-3333

———————————————

SANCTUARY CANNABIS,

    Appellant,

    v.

FLORIDA DEPARTMENT OF
HEALTH,

    Appellee.

———————————————

On appeal from the Division of Administrative Hearings.
William D. Horgan, Administrative Law Judge.

March 26, 2025

OSTERHAUS, C.J.

Sanctuary Cannabis appeals from an order issued by the Division of Administrative Hearings denying Sanctuary's challenge to an emergency rule issued by the Florida Department of Health. We affirm.

I.

In 2016, Florida voters adopted an amendment to the Florida Constitution allowing for the use of marijuana for medical purposes. Art. X, § 29, Fla. Const. The legislature, in turn, passed a statute to administer this field. § 381.986, Fla. Stat. Among other things, the statute requires Medical Marijuana Treatment Centers

(MMTCs)—the entities that distribute marijuana to qualifying patients, *see* Art. X, § 29(b)(5), Fla. Const.—to obtain a license to operate. § 381.986(8)(a), Fla. Stat. The legislature required the Department of Health to adopt the rules to establish a licensing regime "including initial application and biennial renewal fees sufficient to cover the costs of implementing and administering this section." § 381.986(8)(b), Fla. Stat.

In December 2022, the Department published Emergency Rule 64ER22-10 setting forth the requirements for MMTC's to renew their licenses. This rule included a formula for calculating the MMTC renewal fee required by § 381.986(8)(b), stating:

(7) The amount of the renewal fee will be calculated according the to the following formula:

*[(FY 1 actual expenditures + FY 2 actual expenditures) – (MMTC initial license application fees received during FY 1 and FY 2)] / Total number of licensed MMTCs = MMTC renewal fee amount*

(a) FY 1 and FY 2 are the two most recently completed state fiscal years that immediately precede the first day of the two-year calendar period during which renewal applications are due, as reflected in the Medical Marijuana Treatment Center Renewal Fee Schedule. For example, for renewal applications due between January 1, 2023, and December 31, 2024, FY 1 and FY 2 would be the state's fiscal years ending June 30, 2021, and June 30, 2022, respectively.

(b) For purposes of the formula, the total number of licensed MMTCs will be the number of licensed MMTCs as of the date the renewal fee is calculated.

This formula resulted in a MMTC biennial renewal fee of about $ 1.3 million.

In 2023, MMTC Sanctuary Cannabis filed a petition for formal administrative hearing challenging the Department's emergency rule. Sanctuary argued that the emergency rule was arbitrary,

capricious, and an invalid exercise of delegated legislative authority under § 120.52(8)(e), Florida Statutes, because it failed to account for other sources of marijuana-related revenue. Specifically, the rule did not incorporate into its renewal calculation revenue derived from a $75 fee paid by patients seeking medical marijuana identification cards,[1] or from fines the Department was authorized to collect from MMTC's that violated legal requirements.[2] Alternatively, Sanctuary argued that the Department's emergency rule was an invalid exercise of delegated legislative authority under § 120.52(8)(f) because it imposed a regulatory cost "that could be reduced by the adoption of less costly alternatives that substantially accomplish the same statutory objectives."

The Department disagreed with Sanctuary's reading of the statute. It argued that the emergency rule was neither arbitrary nor capricious because the plain text of § 381.986(8)(b) required MMTC application and renewal fees alone to cover the Department's costs of implementing and administering the MMTC licensing regime. As to the § 120.52(8)(f) argument, the Department reasoned that including other revenue sources in the formula would not comport with the express costs-coverage directive in § 381.986(8)(b).

The administrative law judge agreed with the Department's arguments. The ALJ concluded that the challenged portions of the emergency rule were not invalid exercises of delegated legislative authority. Sanctuary now appeals.

---

[1] Florida law provides that "[t]he department may charge a reasonable fee associated with the issuance, replacement, and renewal of identification cards." § 381.986(7)(d), Fla. Stat.

[2] The Department is authorized to "impose reasonable fines not to exceed $10,000 on a medical marijuana treatment center for [certain enumerated] violations." § 381.986(10)(f), Fla. Stat.

3

## II.

"We review the ALJ's findings of fact for competent, substantial evidence, but we review conclusions of law and statutory interpretations de novo." *Fla. Prepaid Coll. Bd. v. Intuition Coll. Sav. Sols., LLC*, 330 So.3d 93, 94 (Fla. 1st DCA 2021).

Sanctuary argues that the Department's emergency rule is an invalid exercise of delegated legislative authority under § 120.52(8)(e) because it is "arbitrary or capricious," and under (8)(f) because it "imposes regulatory costs . . . which could be reduced by the adoption of less costly alternatives that substantially accomplish the statutory objectives." Sanctuary hinges its first argument, that the emergency rule's calculation formula is arbitrary and capricious, on the formula's supposed failure to account for other sources of revenue received by the Department. According to Sanctuary, the Department collects other fees and fines that might partly or fully offset the implementation and administrative costs borne by MMTCs under the rule's licensing-fee calculation formula.

But we see no arbitrariness or capriciousness in the rule's formula because § 381.986(8)(b) explicitly conditions the Department's licensing fee-setting authority on covering two specific costs with these fees. The statute requires that the Department's rule include "initial application and biennial renewal fees *sufficient to cover the costs of implementing and administering this section.*" § 381.986(8)(b), Fla. Stat. (emphasis added). In other words, the statute's plain text demands that MMTC licensing fees cover the Department's implementation and administration costs. Conversely, the statute says nothing of giving flexibility to the Department to net out the card fees paid by customers or other fines to lower the MMTC's licensing costs arising from the Department's implementation and administrative expenses. And so, we cannot conclude that the Department's license-fee calculation or its interpretation of § 381.986(8)(b) is incorrect, arbitrary, or capricious. *See State v. Fla. Senior Living Ass'n, Inc.*, 295 So. 3d 904, 912-13 (Fla. 1st DCA 2020) (reasoning that since a rule was a reasonable interpretation of the controlling statute, the rule was neither arbitrary nor capricious). In fact, we

4

note that § 381.986(8)(b) *requires* the Department to implement a licensing fee regime that covers implementation and administration costs, whereas there is no similar requirement to levy the fees and fines identified by Appellant, much less to offset them against MMTC-paid licensing fees. *See* § 381.986(7)(d) (providing that the Department *may* charge a reasonable fee for personal identification cards); § 381.986(10)(f) ("The Department *may* impose reasonable fines [for MMTC violations]" (emphasis added)).

Alternatively, Sanctuary argues that the Department's emergency rule is an invalid exercise of delegated legislative authority under § 120.52(8)(f). Under this law, a rule may be invalidated if it "imposes regulatory costs on the regulated person, county, or city which could be reduced by the adoption of less costly alternatives that substantially accomplish the statutory objectives." § 120.52(8)(f), Fla. Stat. But we have problems with this argument in that MMTC licensing fees are not rule-imposed costs. Rather, the statute specifies the costs that must be covered by the fees. The Department doesn't have the discretion to alter the legislatively defined calculation requirements in favor of a methodology that shifts costs away from the MMTCs. Additonally, we don't agree that including other fees in the calculation would "substantially accomplish the statutory objectives" because, again, § 381.986(8)(b) requires licensing fees to cover its implementation and administration costs and says nothing of crediting other fees received by the Department in the license-fee formula.

## III.

Sanctuary has not demonstrated that the Department's emergency rule is an invalid exercise of delegated legislative authority. The ALJ's summary final order is therefore AFFIRMED.

BILBREY and WINOKUR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


William Dean Hall, III of Jones Walker, Tallahassee, for Appellant.

Eduardo S. Lombard, Angela D. Miles, and Melissa Hedrick of Lombard Miles PLLC, Tallahassee, for Appellee.